IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH B. COLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-1512 |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY LILLER, | ) | Chief Magistrate Judge Lenihan |
| Big Beaver Falls Area | ) | ECF No. 13 |
| School District Industrial | ) | |
| Technology Instructor, in | ) | |
| his individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Timothy Liller's ("Defendant" or "Liller") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5), 41(b), and 12(b)(6). (ECF No. 13.) Defendant's Motion will be granted in part and denied in part. Defendant's Motion will be granted as it relates to any First Amendment claim, and denied in all other respects.

PROCEDURAL BACKGROUND

The above-captioned Complaint was filed on November 11, 2010. (ECF No. 1.) On August 3, 2011, Plaintiff moved for an extension of time to serve the Complaint. (ECF No. 2.) The Court granted Plaintiff's Motion for Extension of Time on August 4, 2011, and ordered that the time for serving the Complaint be extended an additional 30 days. (ECF No. 3.) Defendant was served on August 11, 2011. (ECF No. 6.)

Thereafter, on August 22, 2011, the parties entered into a "Stipulation for Extension of Time" to answer, move or otherwise respond. (ECF No. 7.)

Plaintiff had filed a previous case arising out of the same facts and circumstances against the Big Beaver Falls Area School District only at Civil Action No. 08-776. On November 12, 2009, this Court dismissed that case with prejudice, granting the Big Beaver Falls Area School District's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Cole v. Big Beaver Falls Area Sch. Dist.*, 08-cv-776, 2009 WL 3807185 (W.D. Pa. Nov. 12, 2009) (Lenihan, J.).

FACTS

Plaintiff, Joseph B. Cole ("Plaintiff" or "Cole") avers that on March 10, 2006, in the Industrial Materials Classroom of the Big Beaver Falls Area Senior High School, "through the actions of Defendant Liller, Plaintiff Cole was directed to execute a blind and particularly difficult cut on a ten-inch arbor table saw on the four edges of the box portion of a table Plaintiff Cole had constructed." (Complaint, ECF No. 1 at ¶¶ 3-5, hereinafter "ECF No. 1 at ¶ __".) Plaintiff continues that "[i]n so directing the Plaintiff Cole to execute this cut, Defendant Liller also directed the removal of a guard on the saw blade, which guard was otherwise designed and intended to protect the Plaintiff Cole from injury." (ECF No. 1 at ¶ 7.) While Plaintiff was executing the four different cuts that required several minutes each to complete, Plaintiff avers that "Defendant Liller walked away from the saw and ceased supervising the Plaintiff Cole." (ECF No. 1 at ¶¶

2

8-9.) Next Plaintiff alleges that "[i]n so directing the Plaintiff Cole to execute the four cuts without the blade guard in place and absent any supervision by his instructor, the Defendant Liller acted with deliberate indifference to the rights and personal safety of the Plaintiff . . . ." (ECF No. 1 at ¶ 11.) Finally, the Plaintiff avers that "Defendant Liller affirmatively acted to cause the harm which would otherwise not have existed had the Defendant Liller not directed the cuts absent a blade guard and adequate supervision." (ECF No. 1 at ¶ 12.) Relatedly, Plaintiff continues as follows:

> Defendant Liller placed the Plaintiff Cole in a dangerous position by:
> 
> a. Instructing the Plaintiff to remove the guard from the saw blade.[sic]
> b. Directing the removal of the guard on the saw to protect Plaintiff and others using the saw for classes sponsored by the School District;
> c. Permitting Plaintiff and others similarly situated to utilize the table saw without a guard on the blade;
> d. Ignoring notice, actual and/or constructive, of the absence of the guard on the saw that this would create a dangerous condition and should have realized that it presented an unreasonable risk of harm to the students;
> e. Failing and neglecting to give due notice or warning to the Plaintiff or others of said hazardous, dangerous and unsafe condition;
> f. Failing to adequately inspect the table saw in order to discover the defect;
> g. Permitting negligent care, custody and control of the saw that created a dangerous condition;
> h. Instructing students to make cuts on the table saw when said saw lacked a blade guard that could be engaged during this particular cut or type of activity;
> i. Providing inexperienced or novice woodworking students with a table saw that lacked adequate safety devices.
>
> (ECF No. 1 at ¶ 12.)

In conclusion, Plaintiff alleges that his injuries "were the foreseeable result of the deliberate indifference of the Defendant Liller as set forth above, which constitutes a state-created danger . . . ." (ECF No. 1 at ¶ 14.)

LEGAL STANDARDS and ANALYSES

Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may ask the court to dismiss a complaint when a plaintiff has failed to properly serve the defendant with the summons and complaint. "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted).

Defendant argues that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(5) for the following reasons: 1) Plaintiff failed to serve the Summons and Complaint within 120 days after the Complaint was filed pursuant to Federal Rule of Civil Procedure 4(m); 2) Plaintiff did not acquire a summons under the guidelines set forth in Federal Rule of Civil Procedure 4(c)(1); 3) the extension of the time to make service ordered by the Court was not supported by good cause; and 4) even though Plaintiff's filing of the Complaint was made one day before the expiration of the statute of limitations, "such a filing does not guarantee preservation of the statute when service is so blatantly ignored." (ECF No. 14 at 8.)

Plaintiff responds that he did not serve the Complaint within 120 days after filing because he indicated that the 2008 civil action was related to the present action on the Civil Cover Sheet. Because Defendant Liller is represented by the same counsel who

4

represented the Big Beaver Falls Area School District in the prior action, Plaintiff assumed that the present action "would be served electronically to present counsel as a result of the prior action." (ECF No. 16 at 3.) Plaintiff further submits that once he was notified by the Court that the Complaint had not been served, he immediately filed a Motion to Extend Time to Effect Service.

Defendant's Motion to Dismiss pursuant to Rule 12(b)(5) must be denied.

Rule 4(m) provides in part as follows:

> **Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good case for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Consequently, a court must grant an extension of time to effect service if good cause exists for the failure to effect service. If good cause has not been shown, however, the court may still grant an extension in the exercise of its discretion. *Holmes v. St. Vincent Health Ctr.*, 06-cv-199E, 2007 WL 2541790, at *2 (W.D. Pa. Aug. 31, 2007) (quoting *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998) and citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). Here, the Court in its discretion, granted Plaintiff an extension of time for a specified period, and Plaintiff effected service within a week.[1]

---

[1] In the Order granting Plaintiff's Motion to Extend Time at ECF No. 3, this Court did not indicate whether good cause existed for Plaintiff's failure to effect service, or whether the Court was exercising its discretion to extend time in the absence of good cause. The Court finds that Plaintiff's assumption, that service would be made electronically because he indicated on the Civil Cover Sheet that the present action was related to Plaintiff's previous civil action, is unreasonable. *See MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (one factor considered by courts in determining existence of good cause is reasonableness of plaintiff's efforts to serve). Therefore, the Court exercised its discretion to extend the time for service in the absence of good cause.

5

The Advisory Committee Note directed to the 1993 Amendments to Federal Rule of Civil Procedure 4(m) provides guidance as to what this Court may consider when deciding to exercise its discretion to extend time for service in the absence of good cause. The Committee Notes provide that, although the list is not exhaustive, "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . . ." Fed. R. Civ. P. 4(m) advisory committee's note (1993). Here, as discussed by Defendant, Plaintiff's action would be barred if, instead of extending time for service, the Court dismissed the action without prejudice. (ECF No. 14 at 8.) Consequently, the Court exercised its sound discretion to extend time for service in the absence of good cause.

As to Defendant's argument that Plaintiff did not acquire a summons under the guidelines set forth in Federal Rule of Civil Procedure 4(c)(1), the docket sheet at ECF Nos. 5 & 6 reflect that a summons was issued in this case. Defendant does not describe how the summons failed to comply with the guidelines set forth in Rule 4(c)(1).

Finally, Defendant's argument that Plaintiff's filing of the Complaint was made one day before the expiration of the statute of limitations, does not change the fact that it was in fact filed before the running of the statute.

For all the above reasons, Defendant's Motion to Dismiss pursuant to Rule 12(b)(5) will be denied.

<u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b)</u>

Federal Rule of Civil Procedure 41(b) provides as follows:

> **(b) Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, a

> defendant may move to dismiss the action or any claim
> against it. Unless the dismissal order states otherwise, a
> dismissal under this subdivision (b) and any dismissal not
> under this rule—except one for lack of jurisdiction,
> improper venue, or failure to join a party under Rule 19—
> operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

Defendant argues that Plaintiff's Complaint should be dismissed pursuant to Rule 41(b) for the same reasons articulated with regard to Rule 12(b)(5). Like Defendant, Plaintiff offers no new arguments in response to Defendant's Motion to Dismiss pursuant to Rule 41(b).

For the same reasons discussed, *supra*, regarding Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(5), Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41 (b) will be denied.

Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard

8

> any legal conclusions. [*Iqbal,*129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

Defendant argues that Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) for two reasons: 1) no facts averred in the Complaint suggest any violation of Plaintiff's First Amendment rights; 2) Plaintiff has failed to plead a violation of state created danger theory and Defendant is therefore entitled to qualified immunity.

Plaintiff offers no response to Defendant's arguments concerning the First Amendment. In response to Defendant's arguments concerning Plaintiff's attempt to state a claim pursuant to the state created danger theory of liability, Plaintiff contends that he has alleged sufficient facts to state a claim pursuant to the state created danger theory.

SECTION 1983

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights,

9

> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

State Created Danger

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court noted that generally, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not impose an affirmative duty upon the state to protect citizens from the acts of private persons. *Id*. at 198-200. In *DeShaney*, the United States Supreme Court rejected the claim of a boy and his mother that local officials, who had repeatedly attempted to ensure the boy's safety from his abusive father, were liable under the "special relationship" theory when the boy remained in his father's custody and was so badly beaten that the boy suffered severe brain damage. *Id*. at 195-96. In rejecting plaintiffs' claim pursuant to the "special relationship" theory, the Court stated that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some

responsibility for his safety and general well-being." *Id*. at 199-200. The Court continued its analysis with the following dicta that provided the foundation for the "state-created danger" theory of liability:

> While the State may have been aware of the dangers Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id*. at 201. The United States Supreme Court emphasized that the substantive component of the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." *Id*. at 195. The *DeShaney* court continued that historically, the purpose of substantive due process "was to protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 196.

In *Kneipp*, the United States Court of Appeals for the Third Circuit relied on the language in *DeShaney* to recognize that a plaintiff alleging a substantive due process violation pursuant to 42 U.S.C. § 1983 could proceed in accordance with a "state-created danger" theory where a state does play a part in the creation of the dangers faced by a private person, or where through its actions, the state renders the individual more vulnerable to them. *Kneipp*, 95 F.3d at 1205, 1211. In order to prevail on a state-created danger claim, a plaintiff must prove the following:

11

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and footnotes omitted)). A plaintiff's failure to satisfy any one of the above elements will defeat the state created danger claim. See *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir. 1997).

Here, Plaintiff has sufficiently alleged all elements of the state created danger theory. First, Plaintiff has alleged that the harm ultimately caused was foreseeable and fairly direct. Plaintiff avers that the harm he suffered, namely the severing of all five fingers of his left hand, was a foreseeable and direct result of Defendant's directive that the guard on the saw blade be removed when executing "a blind and particularly difficult cut on a ten-inch arbor table saw," and at the same time, ceasing to supervise Plaintiff by walking away from the saw while Plaintiff was attempting to execute the blind and difficult cut. (ECF No. 1 at ¶¶ 5, 7, 9, 14-15.)

Second, Plaintiff has alleged facts that Defendant acted with a degree of culpability that shocks the conscience. Whether a state actor acts with a degree of culpability that shocks the conscience "depends largely on the circumstances of the case." *Phillips v. County of Allegheny,* 515 F.3d 224, 240 (3d Cir. 2008). In discussing its then recent case of *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), the *Phillips* court elaborated as follows:

> The time in which the government actors had to respond to an incident is of particular significance. For example, in *Sanford*, we stated that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." [*Sanford*, 456 F.3d] at 306. We then concluded that although *intent* to cause harm must be found in a "hyperpressurized environment," where officials are afforded the luxury of a greater degree of deliberation and have time to make "unhurried judgments," *deliberate indifference* is sufficient to support an allegation of culpability. *Id.* We further noted "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Id.* Finally, where the circumstances require a state actor to make something less exigent than a "split-second" decision but more urgent than an "unhurried judgment," i.e., a state actor is required to act "in a matter of hours or minutes," a court must consider whether a defendant disregarded a "great risk of serious harm rather than a substantial risk." *Id.*

*Phillips*, 515 F.3d at 240-41 (emphasis in original).

The facts alleged in Plaintiff's Complaint suggest that Defendant was not acting in a "hyperpressurized environment." He had sufficient time to proceed deliberately in light of the allegations that he was providing instruction in an Industrial Materials Classroom. Accepting these averments as true, Defendant was not acting in a hyperpressurized environment; instead, he had the luxury of time to make unhurried

13

judgments as to how he would instruct his students. Consequently, in order for Defendant's conduct to "shock the conscience" under the facts and circumstances alleged in the Complaint, Defendant's behavior must reflect deliberate indifference to a substantial risk of serious harm. Plaintiff has alleged that his injuries were the foreseeable result of the deliberate indifference of Defendant in directing the removal of the blade guard when executing a blind and particularly difficult cut. (ECF No. 1 at ¶¶ 5, 6, 14.) Consequently, Plaintiff has sufficiently alleged facts to support the state of mind requirement of the state created danger theory.

Third, Plaintiff has averred the existence of the student-teacher relationship to support the third element of the state created danger theory. That is Plaintiff avers that Defendant "is the Industrial Technology Instructor at the Big Beaver Falls Area School District," and that Plaintiff "was a minor student in said high school and subject to the instruction and direction of Defendant Liller." (ECF No. 1 at ¶¶ 2, 3.) The teacher-student relationship is one such that a student in an Industrial Materials Classroom would be a foreseeable victim of an industrial materials instructor's acts. *See Phillips*, 515 F.3d at 242 (quoting *Morse*, 132 F.3d at 912) ("[T]he relationship requirement of the third element 'contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense.'")

Finally, Plaintiff has alleged facts sufficient to support the final element of the state created danger theory, namely, that Defendant "affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Sanford*, 456 F.3d at 305. In

*Phillips,* the court of appeals also discussed the fourth element regarding the requirement of an affirmative act, emphasizing the following language in *Bright*:

> "Liability . . . is predicated upon the states' *affirmative acts* which work to the plaintiff's detriment in terms of exposure to danger. It is the *misuse of state authority, rather than a failure to use it,* that can violate the Due Process Clause."

*Phillips*, 515 F.3d at 235 (quoting *Bright*, 443 F.3d at 282) (other citation omitted) (emphasis added by *Phillips* court). The *Phillips* court continued that "[t]he line between action and inaction may not always be clear. However, we have never found a state-created danger claim to be meritorious without an allegation and subsequently showing that state authority was affirmatively exercised in some fashion." *Id.* at 235-36.

Here, the allegations in the Complaint sufficiently allege that Defendant acted "affirmatively." Specifically, Plaintiff alleges that when directing Plaintiff to execute the blind and difficult cut, Defendant also directed the removal of the blade guard. (ECF No. 1 at ¶¶ 5, 7.) Hence, Plaintiff has alleged facts sufficient to support the fourth element of the state created danger theory.

Therefore, Plaintiff has averred sufficient facts to state a plausible claim for relief pursuant to the state created danger theory and the court need not reach the issue of qualified immunity. Defendant's Motion to Dismiss Plaintiff's claim pursuant to the state created danger theory arising under the Fourteenth Amendment Substantive Due Process Clause will be denied.

First Amendment

Conversely, Plaintiff has failed to allege any facts to support a plausible claim for relief pursuant to the First Amendment. In fact, the Plaintiff mentions the First

15

Amendment only once in Paragraph 13 of the Complaint when setting forth his state created danger claim. Moreover, Plaintiff appears to concede that he is not attempting to state a First Amendment claim because he makes no attempt to respond to Defendant's arguments on this issue. *See* Defendant's Brief in Support of Motion to Dismiss, ECF No. 14 at 13-14. The facts and circumstances underlying the Complaint simply do not support any claim for relief pursuant to the First Amendment.[2] Therefore, Defendant's Motion to Dismiss any claim for violation of the First Amendment will be granted.

CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss will be granted in part and denied in part. Defendant's Motion will be granted as it relates to any First Amendment claim, and denied in all other respects. An appropriate Order will follow.

BY THE COURT:

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

May 23, 2012

cc: All counsel of record
 Via electronic filing

---

[2] The court of appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would in inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). The Court in this matter is recommending dismissal with prejudice and is not granting leave to amend because it believes such amendment would be futile.